UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MAGI XXI, INC.,

                Plaintiff,

        - against -

STATO DELLA CITTA DEL VATICANO a/k/a
THE HOLY SEE, GERALD P. COLAPINTO, and
SECOND RENAISSANCE, LLC.,

                Defendants.
-----------------------------------------------------------X

**NOT FOR PUBLICATION**

**MEMORANDUM AND ORDER**
**07-CV-02898 (RRM) (JMA)**

MAUSKOPF, United States District Judge.

Plaintiff Magi XXI, Inc. (f/k/a E-21 Inc.) ("Magi") brings this action against Defendants Gerald P. Colapinto ("Colapinto"), Second Renaissance, LLC ("SRLLC") and *Stato Della Citta Del Vaticano* a/k/a The Holy See ("Holy See"), alleging fraud, breach of contract, and numerous other claims in connection with the Defendants' alleged failure to provide contracted-for access to artwork, artifacts, manuscripts and other items in the Vatican Library's vast collection. Plaintiff asserts jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, 1332 and 1367.

Before the Court is a motion by Defendants Colapinto and SRLLC, seeking: (1) to compel Magi to arbitrate its claims against SRLLC; and (2) to stay further proceedings against Colapinto pending disposition of the arbitration. In response, Plaintiff claims that the mechanism for arbitration called for under the parties' contract is illusory, and that if arbitration is compelled, conditions should be imposed. For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND

The Holy See, through its Office of Sales of Publications and Reproductions of the Vatican Museum (*Ufficio Vendita Pubblicazioni e Riproduzioni Dei Musei Vaticani*) ("UVPR"), allows licensees to produce and market certain products reproduced and adapted from materials in the collection of the Vatican Library (*Biblioteca Apostolica Vatican*). Defs' Decl. Ex. C at 1-2 (Docket # 22). Licensees may also use "The Vatican Library Collection" trade name and logo, and "facsimile signatures" of a legal representative of the collection, in order to show the products' official sanction. Id. at 8. California corporation SRLLC is a holder of a "Master License" under this program, id., and may sub-license its rights, subject to UVPR's approval. Id. at 9.

In July 2001, SRLLC, represented by its President and Managing Member Colapinto, entered into seven sub-license agreements with E-21 Global, Inc., the predecessor entity to Magi. Compl. ¶ 57. Under these agreements, E-21/Magi was granted sub-licensee rights, which allowed them to market and sell products inspired by items in the Vatican Library collection. These products included certain merchandise associated with fundraising, as well as confections, stamps, flowers, fundraising, chocolate products, candle products and wrapping paper/gift bags. Defs' Decl. Ex. D-J. These agreements were reportedly reviewed and approved by the administrative manager of the UVPR, an agent of the Vatican Library.

All seven agreements include the following arbitration provisions:

> Governing Law; Dispute Resolution
>
> a) Any disagreements between SRLLC and SUBLICENSEE shall be resolved exclusively in the Sovereign State of Vatican City. SRLLC and SUBLICENSEE each hereby consents to jurisdiction in the Sovereign State of Vatican City, and SRLLC and SUBLICENSEE each hereby

> consents thereto. All proceedings shall be conducted in the English language.
>
> b) Any party to this Agreement may, upon written notice, reasonably made, request that the dispute be decided by binding arbitration. Whenever a controversy arises between SRLLC and SUBLICENSEE in regard to the formulation, interpretation or application of any part of this Agreement, or in regard to an alleged wrongful act by either party, and when the parties are unable to settle said controversy amicably, and one party has demanded arbitration, the dispute shall be referred to a College of Arbiters in the Sovereign State of Vatican City. The College of Arbiters shall be composed of the following three members: one Arbiter designated by SRLLC; one Arbiter designated by SUBLICENSEE; and the third Arbiter, who will be President of the College, will be agreed upon by the two (2) designated Arbiters.
>
> In the instance when a party fails to designate its arbiter within twenty (20) days of the receipt of the appointment of the first Arbiter, the President of the Tribunal of the Sovereign State of Vatican City shall appoint the second Arbiter. If the designated Arbiters cannot agree to a third Arbiter, the President of the College of Arbiters (i.e., the third Arbiter) shall be appointed by the President of the Tribunal of the Sovereign State of Vatican City ("Tribunal"). Every Arbiter shall be independent and impartial.
>
> c) The College of Arbiters shall have its seat in the Sovereign State of Vatican City. There will be no appeal of its decision. The expenses incurred by the arbitration shall be assumed by the losing party.
>
> d) In any arbitration proceeding a party may be represented by counsel of its choice in accord with the laws of the Sovereign State of Vatican City.

Defs' Decl. Ex. A (candy), ¶13(b), Ex. D (confections), ¶13(b), Ex. E (stamps), ¶13(b), Ex. F (flowers), ¶13(b), Ex. G (fundraising), ¶14(b), Ex. H (chocolate products), ¶13(b), Ex. I (candle products), ¶13(b).

Magi alleges that although it advanced royalty fees totaling $425,000 to SRLLC, Magi received very limited access to the Vatican Library's collection. Magi alleges that Colapinto and

3

SRLLC made misrepresentations regarding Colapinto's relationship with Vatican officials and the availability of commercially usable images, thereby fraudulently inducing Magi to enter into the seven sub-licenses and to continue to make royalty payments thereunder.

Magi commenced this action on July 17, 2007. By letter dated August 18, 2007, SRLLC demanded that Magi arbitrate "all disputes and controversies" described in the complaint between Magi and SRLLC "in the Sovereign State of Vatican City before a College of Arbiters, as required by ¶ 13 of each sub-license agreement." Defs' Decl. Ex. K. Counsel for Colapinto and SRLLC allege that Magi has refused to arbitrate this dispute. Magi in turn asserts that it has neither rejected nor consented to arbitration, and is instead concerned that the arbitration will be "illusionary" because, Magi alleges, the "College of Arbiters" referred to in the sub-licenses may not exist. According to Magi, movants' attempt to refer this case to arbitration should therefore be seen as a dilatory tactic.

Movants contend that arbitration of Plaintiff's claims must be compelled and that a stay should be effected, based on the arbitration clauses in the sub-license agreements and pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 et seq. Magi does not appear to contest the arbitrability of the present dispute but asks that if the Court does choose to compel arbitration that it do so conditionally, requiring that the moving Defendants (1) commence the arbitration by a date certain or risk waiver of their arbitration demand, and (2) that the arbitration be completed within a specified period of time.

## DISCUSSION

### A. *Arbitrability of the Present Dispute*

Congressional policy, as embodied in the FAA, favors the enforcement of arbitration clauses. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under the FAA, an arbitration agreement in a contract involving commerce is "valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985). The FAA further provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which would, save for the agreement, have jurisdiction...." 9 U.S.C. § 4. The Supreme Court has made clear that the FAA is mandatory: "by its terms, the Act leaves no place for exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which the arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

Arbitration clauses are construed broadly, and enforcement of an arbitration agreement in relation to a particular claim "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). "Doubts should be resolved in favor of coverage." Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999) (quoting World Crisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)).

5

Plaintiff's claims in the underlying dispute fall squarely within the scope of the sub-licenses' arbitration provisions, and include both issues "in regard to the formulation, interpretation or application of any part of [each sub-license]," and those "in regard to an alleged wrongful act by either party." Indeed, Plaintiff does not deny that it is a signatory to the contracts, or that the claims advanced fall outside the scope of the sub-licenses' arbitration provisions. Nor does Plaintiff contend that there was fraud in the inducement of these provisions.[1] Thus, the contracts at issue here evince a clear intent of the parties to settle their disputes through arbitration. As such, Plaintiff's claims are clearly subject to arbitration.

## B. *Forum of the Arbitration*

The contracts are equally clear as to the place of arbitration – the Sovereign State of Vatican City. Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997 and 330 U.N.T.S. 38 (implemented by 9 U.S.C. §§ 201 et seq.), to which both the United States and the Vatican are signatories, and in the face of an explicit forum-selection provision, this Court has the authority to compel arbitration in the Vatican. See 9 U.S.C. § 206; see also Oil Basins, Ltd. v. Broken Hill Proprietary Co., 613 F. Supp. 483, 486-88 (S.D.N.Y. 1985) (citations omitted).

Plaintiff does not dispute the authority of this Court to compel arbitration in the Vatican, nor does it claim that the Vatican is an inconvenient forum. Rather, Plaintiff maintains that

---

[1] Although Magi is claiming fraud in the inducement of the sub-licenses, it is not asserting fraud in the inducement of arbitration clauses itself. See Buckeye Check Cashing, Inc. v. John Cardegna et al., 546 U.S. 440, 444-45 (2006) ("if the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the 'making' of the agreement to arbitrate - the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally") (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404 (1967)).

arbitration in the Vatican pursuant to the contracts would be "illusionary," and suggests that the "College of Arbiters," the body before which the arbitration would take place, *may not* exist. Plaintiff's only support for this claim is the assertion of counsel that he has "been advised by an attorney who practices in the Vatican that the College of Arbiters does not exist, and has no listing in the Vatican's directory." Plaintiff's Decl. ¶ 7. From this, Plaintiff concludes, that "if there is no College of Arbiters, the provision requiring arbitration before it is an illusion . . ." Id. Plaintiff's claim is based on a misreading of the language of the contracts.

A plain reading of the arbitration provisions clearly demonstrates what is meant by a "College of Arbiters." First, the contracts state that any dispute subject to arbitration "shall be referred to *a* College of Arbiters" (emphasis added). Thus, the term "College of Arbiters" connotes a generic body, of which there can be more than one. Second, the contracts define the composition that entity:

> The College of Arbiters shall be composed of the following three members: one Arbiter designated by SRLLC; one Arbiter designated by SUBLICENSEE; and the third Arbiter, who will be President of the College, will be agreed upon by the two (2) designated Arbiters.

Simply put, the "College of Arbiters" is nothing more than the label used by the parties themselves to describe the arbitral panel. As such, one would not expect it to have a listing in the Vatican directory, and even the most skilled attorney practicing in the Vatican would not be familiar with it. It is a term of art between the contracting parties, and the four corners of the contract unequivocally define its terms.[2] Thus, Plaintiff's argument that there is no single,

---

[2] Movants append to their motion the relevant portions of the Vatican Civil Code governing arbitration of disputes, both in the original Italian and in translation. Article 702 clearly permits the parties to "appoint all the arbitrators, or submit their appointment to one or more third persons; or appoint some of them and submit the appointment of the others to the arbitrators appointed directly . . ." The contract language defining the College of Arbiters and outlining the selection of the arbitrators is consistent with the requirements of this provision.

7

specialized arbitral body in the Vatican called the "College of Arbiters" is based on a misreading of the plain meaning of the contract, and does not in any way render "illusory" the ability of the parties to arbitrate their disputes.

Finally, Plaintiff argues that SRLLC is required to commence the arbitration in the Vatican. Again, Plaintiff misreads the plain language of the contracts. It states, "[a]ny party to this Agreement may, upon written notice, reasonably made, request that the dispute be decided by binding arbitration." Defendant SRLLC has done so through its written demand for arbitration directed to counsel for Plaintiff. See Def's Decl., Exhibit K. Pursuant to the contracts, the next step is referral to the arbitral panel. It is through the instant Motion to Compel Arbitration that Defendant SRLLC seeks that referral. Defendant SRLLC has lived up to its obligations under the contracts; it need not, as Plaintiff argues, unilaterally commence the arbitration.

Magi has indicated that it has "at no time refused to have its disputes and controversies with SRLLC be determined by arbitration in accordance with the provisions of the sub-licenses." Plaintiff's Decl., ¶ 3. Pursuant to the terms of the contracts, it is now time for Magi to so do. For all of the foregoing reasons, Defendant SRLLC's Motion to Compel Arbitration is hereby GRANTED.

## C. *Stay of the Present Litigation*

Defendant Colapinto seeks a stay of judicial proceedings pending the arbitration of the dispute between Plaintiff and SRLLC.[3] A stay of proceedings as to any remaining Defendants

---

[3] Since the filing of the instant Motion, an additional Defendant, *Stato Della Citta Del Vaticano* a/k/a The Holy See, has been duly served with the Summons and Complaint in this action and has appeared through counsel.

pending the outcome of arbitration between the Plaintiff and another Defendant may be granted pursuant to a district court's inherent power to control its docket. See WorldCrisa Corp., 129 F.3d 71. In determining whether to issue a stay, the Court must consider any prejudice that may be suffered and ensure that the balance of hardships and judicial economy favor a stay. See Nederlandse Erts-Tankersmaatschappij v.Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964). Here, there are claims remaining against both Colapinto and The Holy See, and the arbitral panel's consideration of the claims against SRLLC are likely to have an important bearing on - and may be determinative of - the claims against the remaining Defendants. While Plaintiff does not specifically allege prejudice, it does request that this Court impose conditions regarding the commencement and completion of the Vatican arbitration to ensure the speedy resolution of its claims in all forums.

Upon consideration of these issues, the Court GRANTS Defendant Colapinto's request for a stay of the judicial proceedings pending the arbitration between Plaintiff and Defendant SRLLC. The stay is conditioned on the following terms:

1) The parties are to complete the selection of Arbiters and commence the arbitration within 60 days of the date of this Order, and complete the arbitral process within six (6) months of the date of this Order. These deadlines may be extended only for good cause shown upon request of any party.

2) The parties are to file a joint status report on or before October 18, 2008, and every 60 days thereafter, apprising the Court of the status of the arbitration proceedings.

---

However, this Defendant has been granted leave until September 29, 2008 to file its Answer and is not a party to this Motion.

9

3) Should any party to this Order fail to participate in the arbitration or otherwise fail to abide by the terms and conditions of this Order, any party may move to vacate the stay, or seek such other and further relief as may be necessary and proper.

4) The Court may, at any time, modify or vacate the stay.

## CONCLUSION

For the foregoing reasons, the motion to compel arbitration between Plaintiff and Defendant SRLLC, and for a stay of further judicial proceedings in this action pending resolution of the arbitration is GRANTED. The stay is conditioned on the terms set forth in this Order.

SO ORDERED.

Dated: Brooklyn, New York
August 21, 2008

s/ Judge Roslynn R. Mauskopf
ROSLYNN R. MAUSKOPF
United States District Judge