UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MAGI XXI, INC.,

                Plaintiff,

      - against -

STATO DELLA CITTA DEL VATICANO a/k/a
THE HOLY SEE, GERALD P. COLAPINTO, and
SECOND RENAISSANCE, LLC,

              Defendants.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
07-CV-2898 (RRM) (JMA)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

Plaintiff Magi XXI, Inc. (f/k/a E-21 Inc.) ("plaintiff") brings this action against defendants Gerald Colapinto ("Colapinto"), Second Renaissance, LLC ("SRLLC") and *Stato della Città del Vaticano* a/k/a The Holy See (the "Vatican State"), alleging, *inter alia*, fraud, negligence, breach of contract, unjust enrichment, and conversion in connection with the defendants' alleged failure to provide access to artwork, artifacts, manuscripts, and other items in the Vatican Library's collection. Plaintiff asserts jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, 1332, and 1367.

The Vatican State has filed separate motions to dismiss the amended complaint for (1) improper venue based on forum selection clauses contained in sublicense agreements or, alternatively, for forum non conveniens, and (2) lack of subject matter jurisdiction. (Doc. Nos. 92, 104.) Plaintiff opposes both motions.[1] Plaintiff and defendants Colapinto and SRLLC have also filed a joint, unopposed motion to vacate this Court's August 21, 2008 Order compelling arbitration. (Doc. Nos. 82, 100.) For the reasons stated below, the Vatican State's motion to

---

[1] Defendants SRLLC and Colapinto also oppose the Vatican State's motion to dismiss for improper venue based on the forum selection clauses or, alternatively, for forum non conveniens. (Decl. of Sheldon J. Fleishman, executed Jan. 8, 2010 ("Fleishman Decl.") (Doc. No. 90) at 4–5.) Neither defendant, however, opposes the Vatican State's motion to dismiss for lack of subject matter jurisdiction. (*Id.* at 5.)

dismiss on the basis of the forum selection clauses is GRANTED, and the joint motion to vacate the Court's prior Order compelling Plaintiff and defendants SRLLC and Colapinto to arbitrate in the Vatican is also GRANTED.

## BACKGROUND[2]

Plaintiff is a New York corporation with its principal place of business in Long Beach, New York. (Am. Compl. (Doc. No. 12) ¶ 1.) The Vatican State is the territory over which the Holy See exercises sovereign dominion, and is recognized under international law as a juridical person distinct from the Holy See.[3] (*Id.* ¶ 2; Decl. of Paolo Cavana in Supp. of Mot. to Dismiss, executed Jan. 11, 2010 ("First Cavana Decl.") (Doc. No. 95) ¶¶ 26–34.) The Holy See is the governmental and spiritual head of the Roman Catholic Church and, in the person of the Pope, is the sovereign of the Vatican State, recognized by over 150 states as a sovereign government. (First Cavana Decl. ¶¶ 28, 30.) Former defendant *Ufficio Vendita Pubblicazioni e Riproduzioni dei Musei Vaticani* ("UVPR"), or the Office of Sales of Publications and Reproductions of the Vatican Museum, is alleged to be an agency or instrumentality of the Holy See. (Am. Compl. ¶ 3.) Dr. Francesco Riccardi was allegedly at all relevant times the Administrative Manager of UVPR. (*Id.* ¶ 3.) Former defendant *Biblioteca Apostolica Vatican* ("BAV"), or the Vatican

---

[2] The following facts are taken from the amended complaint and the affidavits of the parties. "It is well established that when evaluating a motion to dismiss a complaint based on the existence of a forum selection clause, the Court may consider materials outside the pleadings." *Valenti v. Norwegian Cruise Line*, No. 04-CV-8895 (RWS), 2005 U.S. Dist. LEXIS 6811, at *2 (S.D.N.Y. Apr. 21, 2005) (citing *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997)).

[3] Plaintiff describes the Vatican State and The Holy See as the same entity. (*See* Am. Compl. ¶ 2 (*"Stato della Città del Vaticano* a/k/a The Holy See").) According to the Vatican State's expert, however, they are distinct. (First Cavana Decl. ¶ 26 ("There exist distinctions between the Vatican State and the Holy See, rendering any confluent designations of those entities legally and institutionally incorrect.") Plaintiff does not dispute this fact. Throughout this opinion, the Court refers to defendant *Stato della Città del Vaticano* a/k/a The Holy See as "the Vatican State" because plaintiff chose the Vatican State as the primary name for the defendant in its amended complaint. The Court notes that this distinction is irrelevant to the Vatican State's motion to dismiss for improper venue based on the forum selection clauses or, alternatively, forum non conveniens.

Library, is also alleged to be an agency or instrumentality of the Holy See. (*Id.* ¶ 4.)[4] Defendant

SRLLC is a California limited liability company that has its principal place of business in

Corona, California. (*Id.* ¶ 5.) Defendant Gerald Colapinto, the President and managing member

of SRLLC, is also a resident of California. (*Id.* ¶ 6.)

UVPR has the authority to enter into contracts with third parties for the commercial

exploitation of the artwork and artifacts in the Vatican Library (the "Vatican Library

Collection"). (*Id.* ¶ 21.) On or about May 22, 2000, UVPR and SRLLC entered into a Master

License Agreement granting SRLLC the rights to produce and market specific lines of products

and services based on reproductions and adaptations inspired by items in the Vatican Library

Collection and, subject to certain conditions, to sublicense those rights. (*Id.* ¶ 24.) For example,

the Master License Agreement prohibits SRLLC from entering into sublicense agreements unless

(1) UVPR approves the sublicense agreement in writing and (2) the sublicensee "agrees to be

bound by the terms and conditions of [the Master License Agreement]." (Decl. of Jeffrey S.

Lena in Supp. of Mot. to Dismiss, executed Jan. 11, 2010 ("Lena Decl.") (Doc. No. 94), Ex. A

("Master License Agreement") ¶ 8.) The Master License Agreement also provides that SRLLC

will pay a ten percent royalty fee to UVPR based on all revenues received by SRLLC from

sublicensees purchasing sublicenses from SRLLC. (Am. Compl. ¶ 25.) Finally, the Master

License Agreement also contains a forum selection clause requiring that "[a]ny disagreements

between [UVPR] and [SRLLC] shall be resolved exclusively in the Sovereign State of Vatican

City" and that such disputes "shall be governed by the laws of the Sovereign State of Vatican

City." (Master License Agreement ¶ 13.)

---

[4] On July 17, 2007, plaintiff filed a complaint naming UVPR, BAV, SRLLC, and Colapinto as defendants. (Original Compl. (Doc. No. 1) ¶¶ 2–5.) On October, 29, 2007, plaintiff filed an amended complaint, replacing UVPR and BAV with defendant "*Stato della Città del Vaticano* a/k/a/ The Holy See." (Am. Compl. ¶¶ 2–4.)

On or about July 18, 2001, plaintiff entered into seven sublicense agreements with SRLLC, entitling plaintiff to access artwork and related items needed to market candles, chocolate, confections, flowers, gift bags, stamps, wrapping paper, and fundraising materials bearing reproductions of images from the Vatican Library Collection, as well as the name, logo, and seal of the Vatican Library collection. (Am. Compl. ¶ 26.) As required by the Master License Agreement, Dr. Francesco Riccardi approved each sublicense agreement and signed an approval form on behalf of UVPR and the Vatican State. (*Id.* ¶¶ 25–26.) Each sublicense agreement provides that "UVPR is not a party to this Agreement." (*See, e.g.*, Aff. of Claire Mahr in Opp'n to Mot. to Dismiss, executed May 12, 2010 ("Mahr Aff.") (Doc. No. 99), Ex. Q ("Sublicense Agreement (Stamps)") ¶ 9.) The sublicense agreements also contain supremacy provisions under which the terms of the Master License Agreement control if there is a conflict between agreements. (Lena Decl. Exs. B–H ¶¶ 2, 7(b).)

Plaintiff alleges that SRLLC, Colapinto, and the Vatican State failed to provide access to commercially useable and commercial grade images in the Vatican Library Collection, and that they made numerous misrepresentations concerning, among other things, the strength of their relationship with Vatican officials and the amount of access that plaintiff would have to artwork and other items in the Vatican Library Collection. (Am. Compl. ¶¶ 27–32.) Plaintiff also alleges that the Vatican State knew about these false and inaccurate misrepresentations prior to approving the seven sublicense agreements. (*Id.* ¶ 28.) Although the Master License Agreement provides that the relationship between UVPR and SRLLC was "strictly that of principal and independent contractor," plaintiff alleges that SRLLC and Colapinto acted as agents for the Vatican State in the course of breaching the sublicense agreements, making misrepresentations, and committing fraudulent acts. (*Id.* ¶ 37; Master License Agreement ¶ 9.)

The sublicense agreements contain mandatory forum selection clauses, providing that:

> Any disagreements between SRLLC and SUBLICENSEE shall be resolved exclusively in the Sovereign State of Vatican City. SRLLC and SUBLICENSEE each hereby consents to jurisdiction in the Sovereign State of Vatican City. All disputes relating to this Agreement between SRLLC and SUBLICENSEE shall be governed by the laws of the Sovereign State of Vatican City, and SRLLC and SUBLICENSEE each hereby consents thereto. All proceedings shall be conducted in the English language.

(Lena Decl. Exs. B–H ¶ 13(a).) Both the Master License Agreement and each of the sublicense agreements contain identical arbitration clauses, permitting any party to compel binding arbitration in the Vatican. (*Id*. Exs. B–H ¶ 13(b); Master License Agreement ¶ 13.2.)

Plaintiff commenced this action on July 17, 2007, and filed an amended complaint on October 29, 2007. (Doc. Nos. 1, 12.) On August 21, 2008, the Court granted the joint motion of Colapinto and SRLLC to compel arbitration in the Vatican State. (Doc. No. 51.)[5] The parties opted to abandon the arbitration proceedings, however, because of unexpected costs associated with arbitration in the Vatican State. (Doc. No. 60.) On September 3, 2009, plaintiff and defendant SRLLC asked the Court to vacate its Order compelling arbitration. (*Id.*) At a status conference on October 15, 2009, the Court vacated the stay of proceedings against all three defendants. (Doc. No. 61.) The Court also ordered the parties to submit briefs on the following motions: (1) plaintiff and defendant SRLLC's joint motion to vacate the Court's August 21, 2008 Order compelling arbitration, and (2) the Vatican State's motions to dismiss based on (a) subject matter jurisdiction and (b) the forum selection clauses and/or forum non conveniens. (*Id.*)

On July 14, 2010, plaintiff and defendant SRLLC filed a joint motion to vacate the Court's Order compelling arbitration in the Vatican. (Doc. Nos. 82, 100.) On October 12, 2010,

---

[5] On September 25, 2008, the Court stayed claims against the Vatican State pending the outcome of arbitration between plaintiff and defendants Colapinto and SRLLC. (Doc. No. 53.)

the Vatican State filed separate motions to dismiss based on (1) subject matter jurisdiction and (2) the forum selection clauses and/or forum non conveniens. (Doc. Nos. 92, 104.)

## DISCUSSION

The Second Circuit gives "substantial deference" to forum selection clauses, especially when "'the choice of [a] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen.'" *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (quoting *M/S Bremen v. Zapata Off-Shore Co.* ("*The Bremen*"), 407 U.S. 1, 12 (1972) ("in the light of present-day commercial realities and expanding international trade . . . [a] forum clause should control absent a strong showing that it should be set aside")). Forum selection clauses have "'the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions.'" *Days Inns of Am. v. Memorial Hospitality Corp.*, 97-CV-2438 (RWS), 1997 U.S. Dist. LEXIS 20135, at *6 (S.D.N.Y. Dec. 17, 1997) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991)).

Neither the Supreme Court nor the Second Circuit has "specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006) (quotation marks omitted) (explaining that the Second Circuit has "refused to pigeon-hole [forum selection clause enforcement] claims into a particular clause of Rule 12(b)"). Here, the Vatican State does not cite to Rule 12(b) in its memorandum of law in support of its motion to dismiss on the basis of the forum selection clauses. Given that the Vatican State moves in the alternative to dismiss on the basis of forum non conveniens – "a supervening venue

provision" – the Court treats the motion to dismiss based on the forum selection clauses as a Rule 12(b)(3) motion to dismiss for improper venue. *Rogers v. Brasileiro*, 741 F. Supp. 2d 492, 504 (S.D.N.Y. 2010) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)); *see also Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) (affirming in part and reversing in part grant of motion to dismiss for improper venue based on forum selection clause); *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557 (CPS), 2009 U.S. Dist. LEXIS 49841, at *34 n.9 (E.D.N.Y. June 9, 2009) ("courts in the Second Circuit routinely consider requests to enforce a forum selection clause via Rule 12(b)(3) motions to dismiss for improper venue").  This is consistent with the Vatican State's notice of motion, which requests an order dismissing claims against it pursuant to Rule 12(b)(3).  (Doc. No. 92.)[6]

A court determining whether to dismiss a claim based on a forum selection clause must undertake a four-part analysis. *Phillips*, 494 F.3d at 383.  First, the court decides whether the clause was reasonably communicated to the party opposing enforcement of the forum selection clause. *Id*. (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)).  Second, the court classifies the forum selection clause as either mandatory or permissive – i.e., whether the clause requires, or merely permits, the plaintiff to file suit in the chosen forum. *Phillips*, 494 F.3d at 383 (citing *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)).  Third, the court determines whether the clause covers the relevant claims and parties. *Phillips*, 494 F.3d at 383 (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1358–61 (2d Cir. 1993)).

---

[6] The Court must apply the same standard of review to a presumptively enforceable forum selection clause regardless of what procedural rule the moving party used in seeking to enforce the forum selection clauses: "'the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment.'" *In re Optimal U.S. Litig.*, No. 10-CV-4095 (SAS), 2011 U.S. Dist. LEXIS 46745, at *20 n.77 (S.D.N.Y. May 2, 2011) (quoting *Asoma*, 467 F.3d at 822).  Thus, the Vatican State's choice of procedural mechanism is irrelevant to this decision.

If the forum selection clause was reasonably communicated, has compulsory force, and covers the relevant claims and parties, it is presumptively enforceable. *Phillips*, 494 F.3d at 383 (citing *Roby*, 996 F.2d at 1362–63). To rebut this presumption, the party resisting enforcement of the clause must make a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383–84 (quoting *The Bremen*, 407 U.S. at 15).[7]

In deciding whether to enforce a forum selection clause, a court may rely on "pleadings and affidavits," *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 371 (S.D.N.Y. 2010) (citations omitted), but "[a] disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing." *New Moon*, 121 F.3d at 29. Thus, absent an evidentiary hearing, the Court must view the facts in the light most favorable to the plaintiff. *See id.* (citing *Cutco Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 149 (2d Cir. 1984)). The right to an evidentiary hearing, however, may be waived if one is not requested by the parties. *See Tradecomet.com LLC v. Google, Inc.*, No. 10-CV-911, 2011 U.S. App. LEXIS 15425, at *4 (2d Cir. July 26, 2011) (holding that plaintiff forfeited right to evidentiary hearing in connection with motion to dismiss for improper venue based on forum selection clause by failing to request it (citing *United States ex rel. Drake v. Norden Sys.*, 375 F.3d 248, 256 (2d Cir. 2004))).

---

[7] The question of what law should govern the interpretation of a forum selection clause when, as here, the contract contains a choice of law provision is complex. *See Phillips*, 494 F.3d at 384–86. It is clear, however, that "[w]here parties have not cited to the law provided in the choice-of-law clause, . . . the court may reasonably conclude that they have consented to the application of federal law to interpret the forum selection clause." *Ktv Media Int'l, Inc. v. Galaxy Grp., LA LLC*, No. 10-CV-3973 (JMB), 2011 U.S. Dist. LEXIS 76038, at *15–17 n.9 (S.D.N.Y. July 14, 2011) (citing *Phillips*, 494 F.3d at 386 ("We will assume from the parties' briefing that they do not rely on any distinctive features of [the forum law] and apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.")); *see also Cfirstclass Corp. v. Silverjet, PLC*, 560 F. Supp. 2d 324, 328 n.2 (S.D.N.Y. 2008) (citation omitted). Here, the parties have not relied on Vatican law to interpret the relevant forum selection clauses. Therefore, the Court will apply federal law to interpret the forum selection clauses in the Master License Agreement and the sublicense agreements.

1. <u>The Forum Selection Clauses Were Reasonably Communicated</u>

A forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language. *See Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995). Here, the forum selection clauses in the sublicense agreements (and in the Master License Agreement) were reasonably communicated because they are clearly and unambiguously phrased, and appear in standard font in the main body of each contact. (Lena Decl. Exs. B–H ¶ 13(a); Master License Agreement ¶ 13.1.) Plaintiff does not dispute that the forum selection clauses were reasonably communicated.

2. <u>The Forum Selection Clauses Are Mandatory</u>

"A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386 (citing *Boutari*, 22 F.3d at 52–53). Here, the forum selection clauses in both the sublicense agreements and the Master License Agreement are mandatory because they provide that "[a]ny disagreements between [the parties] *shall* be resolved *exclusively* in the Sovereign State of Vatican City." (Lena Decl. Exs. B–H ¶ 13(a) (emphasis added); Master License Agreement ¶ 13.1 (emphasis added).) Plaintiff also does not dispute that the forum selection clauses are mandatory.

3. <u>Scope of the Forum Selection Clauses</u>

To be presumptively enforceable a forum selection clause must cover the relevant claims and parties. *Phillips*, 494 F.3d at 383. The Vatican State is not a signatory to the sublicense agreements between plaintiff and SRLLC containing the relevant forum selection clauses. (Lena Decl. Exs. B–H ¶ 9 ("UVPR is not a party to this Agreement").)[8] Plaintiff argues that the

---

[8] It is also undisputed that plaintiff is not a signatory to the Master License Agreement between the Vatican State and SRLLC, which contains a nearly identical forum selection clause.

Vatican State cannot, as a non-signatory, enforce the forum selection clauses in the sublicense agreements. (Pl.'s Mem. in Opp'n to Mot. to Dismiss for Improper Venue and/or Forum Non Conveniens ("Pl.'s Mem. in Opp'n") (Doc. No. 97) at 10–13.)[9]

This argument is without merit. "[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (non-signatory successor in interest to original signatory was bound by forum selection clause) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). Indeed, "it is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Weingrad v. Telepathy, Inc.*, No. 05-CV-2024 (MBM), 2005 U.S. Dist. LEXIS 26952, at *15 (S.D.N.Y. Nov. 3, 2005) (citation and internal quotation marks omitted) (holding that non-signatory defendants could enforce forum selection clause against plaintiff).

A non-signatory may enforce a forum selection clause when it is closely related to a signatory. More specifically, a non-party to a contract may enforce a forum selection clause if "'the relationship between the non-party and the signatory [is] sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound.'" *In re Optimal*, 2011 U.S. Dist. LEXIS 46745, at *39–40 (quoting *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 09-CV-10550 (SHS), 2000 U.S. Dist. LEXIS 12945, at *8 (S.D.N.Y. Sept. 7, 2000)); *see also Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) ("courts in [the Second] Circuit and elsewhere have articulated and applied the 'closely related' doctrine") (collecting cases)); *In re Refco Sec. Litig.*, 10-CV-1868 (JSR), 2009 U.S. Dist. LEXIS 130683, at *40 (S.D.N.Y. Nov. 16, 2009) (Special Master's Report and Recommendation), *adopted by* 2010

---

[9] Plaintiff does not argue that the forum selection clauses do not apply to the claims in this case.

U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010) ("After *Aguas*, there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard."); *Novak v. Tucows, Inc.*, No. 06-CV-1909 (JFB), 2007 U.S. Dist. LEXIS 21269, at *46 (E.D.N.Y. Mar. 26, 2007) (non-signatory defendant could enforce forum selection clause against plaintiff).

Under this standard, the Vatican State is sufficiently related to plaintiff, SRLLC, and the sublicense agreements such that enforcement of the forum selection clauses by the Vatican State was foreseeable. There are multiple grounds for this conclusion: (1) the Vatican State's interests in the sublicense agreements are derivative of and directly related to SRLLC's conduct in entering into and allegedly violating those agreements; (2) SRLLC's rights in the sublicense agreements are derivative of and depend on the rights it acquired from the Vatican State; (3) the Master License Agreement entitled the Vatican State to exercise significant control over the form and content of the sublicense agreements; and (4) plaintiff alleges the signatories (SRLLC and Colapinto) are the non-signatory's (Vatican State) agents for liability purposes and its claims against all three defendants are essentially identical. Moreover, the Vatican State may enforce the forum selection clause in the Master License Agreement as a signatory because plaintiff asserts claims for breach of contract on the theory that it is a third-party beneficiary of that agreement.

　　　　*a. Derivative Rights*

"A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Cuno, Inc. v. Hayward Indus. Prods.*, No. 03-CV-3076 (MBM), 2005 U.S. Dist. LEXIS 8886, at *17 (S.D.N.Y. May 11, 2005) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285,

1299 (11th Cir. 1998)). Here, the Vatican State's interests in the sublicense agreements "are derivative of," "directly related to," and "depend on" SRLLC's conduct in entering into and allegedly violating those agreements. *Cuno, Inc.*, 2005 U.S. Dist. LEXIS 8886, at *17 (non-signatory was closely related because its "rights as licensee of the disputed patents are derivative of and depend on [signatory's] rights" under the agreement); *see also Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008). Moreover, SRLLC's rights in the sublicense agreements are derivative of and depend on the rights it acquired from the Vatican State through the Master License Agreement. Lastly, if SRLLC and Colapinto acted as agents for the Vatican State, as plaintiff alleges, the Vatican State's potential liability would be "derivative of and predicated on whether" SRLLC and Colapinto actually defrauded plaintiff. *Weingrad*, 2005 U.S. Dist. LEXIS 26952, at *16–17; *see also Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09-CV-7268 (HB), 2009 U.S. Dist. LEXIS 119009, at *9–10 (S.D.N.Y. Dec. 21, 2009) ("[F]rom [plaintiff's] own allegations, it appears that any potential liability of the non-signatory Defendants is 'completely derivative of and directly related to, if not predicated upon' [the signatory defendant's] conduct, and thus enforcement of the forum selection clause seems perfectly proper." (citation omitted)). For these reasons, the Vatican State and SRLLC, a signatory to the sublicense agreements, are closely related to each other.

> b. *The Vatican State's Control Over the Sublicense Agreements*

The Vatican State is also a closely related party because, as the original licensor of the rights at issue, it exercised significant control over the form and content of the sublicense agreements. The Master License Agreement, which contains a forum selection clause nearly identical to those in the sublicense agreements, required that (1) the sublicensee (here, plaintiff) agree to be bound by the terms of the Master License Agreement, and (2) the Vatican State retain

the right to approve all sublicense agreements.[10]  (Master License Agreement ¶ 8.)  Moreover, the sublicense agreements contain supremacy provisions under which the terms of the Master License Agreement control if there is any conflict between agreements.  (Lena Decl. Exs. B–H ¶¶ 2, 7(b).)

Thus, it was foreseeable that the Vatican State – as the party that negotiated for the forum selection clause in the Master License Agreement and effectively required that the sublicense agreements contain identical forum selection clauses – would seek to enforce those clauses against a sublicensee such as plaintiff when faced with claims arising out of either the Master License Agreement or the sublicense agreements.  *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (non-signatories were closely related because they were part of a "larger contractual relationship" with signatories and the "alleged conduct of the nonparties is closely related to the contractual relationship"); *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 565–66 (S.D.N.Y. 2004) (holding that the defendant-licensor could enforce forum selection clause against plaintiff, a sublicensee, even though plaintiff was not a party to the license agreement containing the clause).[11]  In contrast, it is far less foreseeable that SRLLC and Colapinto would decide to waive the forum selection clause after having invoked the clause in compelling arbitration in the Vatican State.  (Doc. Nos. 82, 100.)

---

[10] In an affidavit submitted by plaintiff, plaintiff's president acknowledges that "[i]n addition to the approval process, Dr. Riccardi and the Holy See even had authority over SRLLC's ability to terminate sublicenses."  (Mahr Aff. ¶ 16.)

[11] In arguing that the Vatican State cannot enforce the forum selection clauses in the sublicense agreements, plaintiff relies almost exclusively on the Second Circuit's decision in *McPheeters, III v. McGinn, Smith & Co., Inc.*, 953 F.2d 771 (2d Cir. 1992), which concerned a motion to compel arbitration.  (Pl.'s Mem. in Opp'n at 11–12.)  Although *McPheeters* held that a non-signatory to a contract can enforce an arbitration clause where it is the "intent of the parties," the decision has never been cited in the forum selection context.  *McPheeters*, 953 F.2d at 772–73 ("under general contract principles, we may deem non-signatories to fall within the scope of an arbitration agreement where that is the intent of the parties").  When it comes to forum selection clauses, the standard in this Circuit and elsewhere is whether the non-signatory is "closely related" to one of the signatories such that it is "foreseeable" that the non-signatory would seek to enforce the clause.  *KTV Media Int'l, Inc. v. Galaxy Group, LA LLC*, No. 10-CV-3973 (JMB), 2011 U.S. Dist. LEXIS 76038, at *23–25 (S.D.N.Y. July 14, 2011) (collecting cases).  Thus, *McPheeters* is inapposite and plaintiff's reliance on it is misplaced.

*c. Identical Claims Against All Defendants and Allegations of Agency Relationship*

The Vatican State is also a closely related party because plaintiff claims that SRLLC, Colapinto, and the Vatican State acted together to defraud plaintiff; indeed, plaintiffs' claims against the Vatican State are essentially identical to those it asserts against SRLLC and Colapinto. Where a plaintiff makes such allegations against a non-signatory, courts have found that the non-signatory is a closely related party. *See, e.g.*, *Universal Grading Serv.*, 2009 U.S. Dist. LEXIS 49841, at *60 (non-signatory co-defendants were closely related where "plaintiffs' claims [arose] out of the same alleged conspiracy between the defendants" and "plaintiffs' claims [were] substantially identical with regard to each defendant"); *Novak*, 2007 U.S. Dist. LEXIS 21269, at *46 (plaintiff failed in its attempt to evade forum-selection clause by suing non-signatory because its claims against all defendants, including the non-signatory, were "nearly identical"); *Weingrad*, 2005 U.S. Dist. LEXIS 26952, at *17 (non-signatory defendants were closely related where plaintiff alleged they "acted in concert" and its claims against the signatory and non-signatory defendants were "substantially identical" and arose "out of the defendants' relationships with each other").

Plaintiff wants it both ways. Plaintiff claims that the Vatican State is liable under the sublicense agreements because Colapinto and SRLLC acted as its agents. And yet, on this motion, plaintiff hopes to rely on the fact that the Vatican State is not a signatory to those same agreements. These positions are irreconcilable. "[Plaintiff] is not entitled (1) to draw [the Vatican State] into litigation on the theory [SRLLC] was [the Vatican State's] agent in executing the Subcontract, and then (2) to disavow applicability of the [forum selection clause] because [the Vatican State] was not a formal contracting party." *Crescent Corp. v. Proctor & Gamble Corp.*, 627 F. Supp. 745, 748 (N.D. Ill. 1986); *see also Glyphics Media, Inc. v. M.V. "Conti*

*Singapore*", No. 02-CV-4398 (NRB), 2003 U.S. Dist. LEXIS 4387, at *24 (S.D.N.Y. Mar. 21, 2003) ("because [signatory] was acting as the [non-signatory's] agent when it entered into a contract . . . , plaintiffs are bound by the Indian forum selection clause"); *accord Exter Shipping, Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1309 (N.D. Ga. 2004) ("A plaintiff cannot use a business relationship to establish jurisdiction or liability and then deny that same relationship to prevent the applicability of a forum selection clause." (citation omitted)); *Frietsch v. Refco, Inc*., 1994 U.S. Dist. LEXIS 12642, at *12–13 (N.D. Ill. Sept. 6, 1994) (same), *aff'd*, 56 F.3d 825 (7th Cir. 1995) (Posner, J.).[12]

Given that plaintiff's claims against the Vatican State "ultimately hinge on rights and duties defined by" the sublicense agreements, "principles of mutuality and fairness suggest that [the Vatican State] should be entitled to assert the forum selection clause[s] contained in [those same agreements] in defending those claims." *Direct Mail Prod. Servs.*, 2000 U.S. Dist. LEXIS 12945, at *13 (citing *Albany Ins. Co. v. Banco Mexico*, No. 96-CV-9473 (DAB), 1998 U.S. Dist. LEXIS 16292, at *7 (S.D.N.Y. Oct. 19, 1998) (same), *aff'd mem.*, 182 F.3d 898 (2d Cir. 1999)).[13]

### d. Breadth of Forum Selection Clauses

Plaintiff contends that the Vatican State cannot rely on cases allowing closely related non-signatories to enforce forum selection clauses because the clauses in those cases contain broader language than the forum selection clauses in the sublicense agreements. (Pl.'s Mem. in

---

[12] As noted above, if SRLLC and Colapinto acted as agents of the Vatican State, as plaintiff alleges, the Vatican State's potential liability would be "derivative of and predicated on whether" SRLLC and Colapinto actually defrauded plaintiff. *Weingrad*, 2005 U.S. Dist. LEXIS 26952, at * 16–17.

[13] Although plaintiff correctly argues that the Vatican State is not a third-party beneficiary of the sublicense agreements, (Pl.'s Mem. in Opp'n at 12–13), this fact is not dispositive of whether the Vatican State is a closely related party. Courts agree that while "'third-party beneficiaries to a contract would, by definition, satisfy [the] requirement [that a non-signatory be a closely related party] . . ., a third-party beneficiary status is not required.'" *In re Optimal*, 2011 U.S. Dist. LEXIS 46745, at *40 (citing *Direct Mail Prod. Servs. Ltd.*, 2000 U.S. Dist. LEXIS 12945, at *9); *see also Universal Grading Serv.*, 2009 U.S. Dist. LEXIS 49841, at *60 (same) (citing *Hugel*, 999 F.2d at 209–10 n.7); *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 277 (D. Conn. 2009).

Opp'n at 12 n.8.) Specifically, plaintiff points out that the sublicense agreements are expressly limited to "disagreements between SRLLC and SUBLICENSEE," whereas the clauses in cases cited by the Vatican State do not refer to the contracting parties. (*Id.*)

This argument is unpersuasive. "[A]lthough it is true that this forum selection clause refers only to the parties to the [sublicense agreements], this fact does not preclude application of the 'closely related' doctrine, which exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." *Firefly Equities LLC*, 736 F. Supp. 2d at 800 (enforcing forum selection clause against non-signatory despite fact that it was "defined in reference to the parties to this agreement" and did "not include language as broad as that in some of the clauses" in other cases); *see e.g.*, *Lipcon*, 148 F.3d at 1299 (closely related non-signatories bound by forum selection clause where clause referred to "[e]ach party hereto"); *Metro-Goldwyn-Mayer Studios Inc. v. Canal+ Distrib. S.A.S.*, No. 07-CV-2918 (DAB), 2010 U.S. Dist. LEXIS 12765, at *14–16 (S.D.N.Y. Feb. 5, 2010) (holding that plaintiff was entitled to enforce forum selection clause against non-signatory successor-in-interest where clause expressly referred to "[e]ach of the parties"); *BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp. 2d 269, 277 (D. Conn. 2009) (finding that defendants were closely related even though forum selection clause only referred to "the parties" "because third-party beneficiary status is simply one way in which a non-party can be closely related").

e. *Master License Agreement*

Finally, the Vatican State may enforce the forum selection clause in the Master License Agreement. In its amended complaint, plaintiff alleges that it is a third-party beneficiary of the Master License Agreement – an agreement containing a nearly identical forum selection clause –

and that it is entitled to damages for breach of that agreement. (Am. Compl. ¶ 85.) A third-party beneficiary to a contract is "by definition" a closely related party to that contract. *In re Optimal*, 2011 U.S. Dist. LEXIS 46745, at *40 (citing *Direct Mail Prod. Servs. Ltd.*, 2000 U.S. Dist. LEXIS 12945, at *9); *see also Roby*, 996 F.2d at 1358; *Universal Grading Serv.*, 2009 U.S. Dist. LEXIS 49841, at *60 (same) (citing *Hugel*, 999 F.2d at 209–10 n.7); *BNY AIS Nominees*, 609 F. Supp. 2d at 277. Thus, principles of mutuality and fairness dictate that the Vatican State is entitled to enforce the forum selection clause in the Master License Agreement. *See Direct Mail Prod. Servs.*, 2000 U.S. Dist. LEXIS 12945, at *13.

In sum, any of the foregoing bases – (1) that plaintiff alleges the signatories (SRLLC and Colapinto) are the non-signatory's (Vatican State) agents for liability purposes and its claims against all three defendants are essentially identical; (2) that the Vatican State's potential liability is derivative of SRLLC and Colapinto's alleged misrepresentation and fraudulent acts; (3) that the Vatican State's interests in the sublicense agreements are derivative of and directly related to SRLLC's conduct in entering into and allegedly violating those agreements; (4) that SRLLC's rights in the sublicense agreements are derivative of and depend on the rights it acquired from the Vatican State; and (5) that the Master License Agreement entitled the Vatican State to exercise significant control over the form and content of the sublicense agreements – are sufficient to show that the Vatican State is a closely related party. It was therefore eminently foreseeable that the Vatican State would enforce the forum selection clauses in the sublicense agreements in defending against claims arising out of those agreements. Accordingly, the Vatican State is entitled to enforce the forum selection clauses in the sublicense agreements. The Vatican State may also enforce the forum selection clause in the Master License Agreement as a

signatory because plaintiff asserts claims for breach of contract on the theory that it is a third-party beneficiary of that agreement.

Thus, because the forum selection clauses were reasonably communicated, have compulsory force, and cover the relevant claims and parties, they are presumptively enforceable.

4.    Rebutting the Presumption of Enforceability

When a court finds a forum selection clause to be presumptively enforceable, the burden shifts to the non-moving party to "rebut the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383–84 (quoting *The Bremen*, 407 U.S. at 15).  "[T]he Supreme Court has construed this exception [to enforcement] narrowly," *Roby*, 996 F.2d at 1363, and a party opposing the enforcement of a presumptively enforceable forum selection clause on the basis of unreasonableness "bears a heavy burden." *New Moon Shipping Co.*, 121 F.3d at 32.

Courts will not enforce a forum selection clause if the non-moving party makes a strong showing that "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips*, 494 F.3d at 392 (citing *Roby*, 996 F.2d at 1363).  Here, plaintiff's attempt to rebut the presumption of enforceability focuses on the second and fourth factors.  Stated broadly, plaintiff argues that the Vatican State provides an inadequate and fundamentally unfair forum.  As discussed below,

however, plaintiff has not carried its heavy burden of rebutting the presumption of

enforceability.[14]

> ### a. Vatican Law and Governmental Structure

According to the expert report of Professor Paolo Cavana,[15] the Vatican State is an

"elective monarchy with legislative, executive, and judicial powers all originally vested in the

Pope." (First Cavana Decl. ¶ 49.) The Vatican State "conforms to the norms of general

international law and to those deriving from treaties and other agreements to which the Holy See

is a party." (*Id.* ¶ 54.) The Vatican State has full legal personality, and can be sued in the

Vatican Courts. (*Id.* ¶¶ 66–67.)

The judicial power of the Vatican State "is exercised, on behalf of the [Pope], by the

bodies established according to the judicial system of the State" and the "competence of each of

such body is regulated by law." (*Id.* ¶ 52.) The Vatican courts are organized in the following

way: (1) the *Giudice Unico* (single judge); (2) the *Tribunale* (tribunal or court of first instance)

(the "Vatican Tribunal"); (3) the *Corte d'Appello* (court of appeal); (4) the *Corte di Cassazione*

(court of cassation, or court of last resort for non-constitutional matters). (*Id.* ¶ 60.) These

courts have general jurisdiction over purely secular matters. (Decl. of Professor Paolo Cavana in

---

[14] As noted above, "[a] disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing." *New Moon Shipping*, 121 F.3d at 29. Here, it is unnecessary to hold an evidentiary hearing in connection with this motion because the parties do not any dispute material facts in the record. Rather, the parties disagree about whether the facts support enforcement of the forum selection clauses. Even taking as true all facts submitted by plaintiff, and viewing all facts in the light most favorable to plaintiff, the Court finds that plaintiff has not carried its heavy burden of rebutting the presumption of enforceability of the forum selection clauses. Thus, it is unnecessary to hold an evidentiary hearing. *See Stair v. Calhoun*, No. 07-CV-03906 (JFB), 2009 U.S. Dist. LEXIS 23630, at *15 (E.D.N.Y. Mar. 23, 2009) (citation omitted) (decision whether to hold an evidentiary hearing is within the sound discretion of the court). Moreover, plaintiff did not request an evidentiary hearing and, therefore, it waived its right to one. *See Tradecomet.com LLC v. Google, Inc.*, No. 10-CV-911, 2011 U.S. App. LEXIS 15425, at *4 (2d Cir. July 26, 2011) (holding that plaintiff had waived right to evidentiary hearing in connection with motion to dismiss for improper venue based on forum selection clause by failing to request it) (citing *United States ex rel. Drake v. Norden Sys.*, 375 F.3d 248, 256 (2d Cir. 2004)).

[15] Apart from several articles submitted by plaintiff, the declarations of Professor Cavana, the Vatican State's expert, constitute the only evidence in the record regarding Vatican law, Italian law, and the governmental structure of the Vatican State. Plaintiff did not submit an expert report.

Supp. of Mot. to Dismiss, executed Oct. 11, 2010 ("Second Cavana Decl.") (Doc. No. 102) ¶ 14.) Cases of minimum value and other specific kinds of cases are brought before the *Giudice Unico* (single judge). (First Cavana Decl. ¶ 64.) Civil actions regarding economic matters are decided by the Vatican Tribunal. (*Id.*) In 1987, Pope John Paul II permanently separated the ecclesiastic courts, which consider religious issues, from the Vatican State courts, which decide civil and criminal cases. (First Cavana Decl. ¶ 62.) The Vatican State seeks dismissal of this case in favor of the Vatican Tribunal. (Def.'s Mem. in Supp. of Mot. to Dismiss for Improper Venue and/or Forum Non Conveniens ("Def.'s Mem. in Supp.") (Doc. No. 92) at 7.)

Although appointed by the Pope, the judges who sit on these courts are "only subject to the law" in making "their decisions or other measures" and "their final arguments." (First Cavana Decl. ¶ 61.) The Vatican Tribunal is composed of three Italian law professors who teach at universities in Italy. (Second Cavana Decl. ¶ 24.) Plaintiff's expert explains that "Vatican legislation includes specific provisions guaranteeing impartiality of judges, formation of evidence and right of defense, consistent with the civil law process tradition." (First Cavana Decl. ¶¶ 69–75.) Vatican civil procedure is closely modeled on the laws of Italian civil procedure. (*Id.* ¶ 70.)

Vatican substantive law includes primary and supplementary sources. (*Id.* ¶ 54.) These primary sources of law include canon law and "other laws and regulations approved for the Vatican State by the Pope, the Papal Commission or other organisms recognized legislative power." (*Id.*) Italian law is the supplementary source in all matters "not regulated" by the primary sources, assuming, inter alia, that the Italian law does not conflict with divine law or the principles of canon law. (*Id.* ¶ 55.) The Vatican State's expert explains that "[n]either canon law

nor the laws of the [Vatican State] contain specific provisions with regard to civil and commercial matters."  (Second Cavana Decl. ¶ 15.)

The Vatican State's expert explains that "[o]nly some non-spiritual matters are addressed by Vatican law, such as Vatican citizenship, the juridical capacity of some clergymen, marriage, and adoption . . . .  In all other matters, including matters of contractual and civil liability, the Italian Civil code is applied, provided it does not conflict with divine law, the general principles of canon law or the provisions of the Lateran Treaty.  On the basis of the above principles, Vatican Courts defer to and apply Italian legislation to address and resolve civil and commercial matters.  This is consistent with the purpose of simplifying and facilitating the close and substantial commercial relations between the State of Vatican City and the State of Italy.  Such deference to Italian civil law is also consistent with positive divine law, which requires separation between temporal (secular) and spiritual matters.  *Cf.* 22 Matthew 15:22 ("Give Caesar what is Caesar's, and to God what is God's.")."  (Second Cavana Decl. ¶¶ 15–17 (internal citations omitted).)

Until 2008, the Vatican incorporated the 1865 and 1882 Italian Civil Codes.  (First Cavana Decl. ¶ 56.)  In 2008, the Vatican incorporated the 1942 Italian Civil Code, "unifying both the prior codes, currently in force in Italy, with its amendments in force until December 31, 2008."  (*Id.*)[16]  The Vatican State's expert opines that the laws of the 1865 and 1882 Italian Civil Codes could still apply to aspects of this case because the 2008 law incorporating the 1942 Italian Civil Code only applies to "substantial situations occurring after January 1, 2009."  (*Id.* ¶ 53.)[17]

---

[16] The 2008 law also incorporates any "laws passed by the Italian State," allowing for the application of more recent legislation.  (First Cavana Decl. ¶ 55.)

[17] The Vatican State argues that the 1865 Italian Civil Code would govern the 2000 license and 2001 sublicense agreements.  (Def.'s Mem. in Supp. at 7 n.4.)

*b. The Pope's Role in the Vatican Courts*

Plaintiff asks this Court to infer from the structure of the Vatican court system that it would not provide a fair forum for litigation against the Vatican State. Specifically, plaintiff argues that the Pope wields excessive control over the Vatican court system by appointing judges and retaining the equitable right to intervene in cases before the Vatican courts. (Pl.'s Mem. in Opp'n at 4–5.)

This argument is unpersuasive. The Pope has delegated his judicial authority to the Vatican court system, but he retains the right to overrule a Vatican court decision on the basis of equity. (Decl. of Bart Fisher in Opp'n to Mot. to Dismiss, executed May 12, 2010 ("Fisher Decl.") (Doc. No. 98), Ex. C at 1736 ("Popes have delegated their judicial authority to a court system, but that does not diminish the fact that the Pope may completely bypass the system at any time."); Second Cavana Decl. ¶ 20 (explaining that provision of Fundamental Law allows the Pope to "provide equitable relief when strict application of the law would result in an injustice").) The Vatican State does not dispute that the Pope has retained this power, but notes that there is no record of a Pope ever having exercised the right to intervene in a civil case before any Vatican court. (Second Cavana Decl. ¶ 21.)

Moreover, as the Vatican State's expert explains, the Pope does not have "an arbitrary power or the right to directly take over civil or criminal cases. Rather, this provision allows the [Pope] to provide equitable relief when strict application of the law would result in injustice. In that regard, [the law giving the Pope this equitable power] corrects a fundamental limitation of all civil law systems, namely that judges must always apply the law neutrally, and allows for equitable review and relief in extreme cases to avoid harsh results. In actuality, since the establishment of the Vatican City State there is no record of the [Pope] exercising his equitable

powers . . . to intervene in a civil or commercial case before any Vatican Court." (Second Cavana Decl. ¶¶ 20–21.)

It would be unreasonable to infer from the mere existence of the Pope's equitable power to overrule a Vatican decision – a power apparently never before exercised in a civil case – that the Pope would use that power in this case. In any event, the "structure of the government and judiciary of [the Vatican State] were all matters which were known, or clearly should have been known, when plaintiff entered into the contract[s]" at issue here. *Ringling Bros. v. Int'l Circus Festival of Monte-Carlo*, No. 80-CV-6923 (TPG), 1981 U.S. Dist. LEXIS 12784, at *4–5 (S.D.N.Y. May 6, 1981); *see also Blanco*, 997 F.2d at 981. Moreover, "principles of comity strongly caution against declaring the entire court system of another country to be inadequate, and these concerns are even more forceful where, as here, the parties consented to jurisdiction in the allegedly inadequate forum in the first place." *Zeevi Holdings LTD. v. Republic of Bulg.*, No. 09-CV-8856 (RJS), 2011 U.S. Dist. LEXIS 38565, at *24 (S.D.N.Y. Apr. 5, 2011) (citation omitted).

Plaintiff also asserts that Vatican judges are biased in favor of the Vatican State because the Pope is responsible for appointing them. (Pl.'s Mem. in Opp'n at 5.) But every judge of the Vatican Tribunal, which is the Vatican court that would hear this case, is an Italian law professor at an Italian university. (*See* Second Cavana Decl. ¶¶ 22–26.) This fact undercuts plaintiff's argument that they are corrupt, biased, and beholden to the Pope. It is also hardly uncommon for an executive to make judicial appointments.

Moreover, this well-worn argument – that a country's forum cannot be expected to provide a fair trial when a state-owned entity is a defendant – has little force. *See, e.g.*, *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 298 F. App'x 87, 91 (2d Cir. 2008) ("[T]his Court will

not presume judicial bias against the plaintiff when the defendant is a state-owned entity." (citing *Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002) ("It is hardly unusual, considering the number of state-owned business entities throughout the world, for a finding of forum non convenience to be made in favor of the forum of a state whose entity is a party litigant."))).  Indeed, the Second Circuit has been "reluctant to find foreign courts 'corrupt' or 'biased.'"  *Monegasque*, 311 F.3d at 499 (citation omitted).  This Court shall not presume that Vatican courts would act in a biased or corrupt manner towards plaintiff because the Vatican State is a defendant.

Even viewing the Pope's power in the light most favorable to plaintiff, the Vatican courts stand apart from those found to be sufficiently biased or corrupt to make the enforcement of a forum selection clause unreasonable.  *See, e.g.*, *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 335 (S.D.N.Y. 2003) (finding that Sudan was inadequate forum, in part because "plaintiffs, who are non-Muslims, enjoy greatly reduced rights in Sudan under the system of Islamic law (Shari'a)" and the government "conducted a war of 'ethnic cleansing' against plaintiffs"); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996) (denying motion to dismiss for forum non conveniens where Ghanaian citizen with political asylum established that he would face persecution if he brought a case in Ghana alleging that he had been tortured by a Ghanaian official); *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2d Cir. 1985) (denying forum non conveniens dismissal and finding alternative forum inadequate because plaintiffs would not "obtain justice at the hands of the courts administered by Iranian mullahs" and "would probably be shot" if they returned to Iran); *Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico, S.A.*, 528 F. Supp. 1337, 1342–43 (S.D.N.Y. 1982) ("serious questions about the

independence of the Chilean judiciary vis-a-vis the military junta currently in power" and fact that there existed evidence "that the junta in fact interceded in a pending case" made Chile an inadequate forum).[18]

### c. Alleged Scam

Plaintiff also claims to have been the victim of a scam allegedly perpetrated by a lawyer who practices before the Vatican courts. (Pl.'s Mem. in Opp'n at 7–9.) As alleged, plaintiff's president told Vatican State officials about the scam, but claims she has not been asked testify about it, and does not know whether the matter was ever investigated. (*Id.*) Even taking this single anecdote as true, it would be unreasonable to infer from it that the Vatican State deliberately ignored this alleged scam, or that its courts are somehow corrupt if it did. *See, e.g.*, *Blanco*, 997 F.2d at 981–82; *Zeevi Holdings LTD.*, 2011 U.S. Dist. LEXIS 38565, at *24 (holding that petitioner failed to rebut the presumption of a forum clause's enforceability despite providing evidence of specific bias and corruption, including fact that its representatives were "harassed and intimidated" by state authorities who initiated an investigation accusing them of "anti-state activities"); *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 705

---

[18] Plaintiff cites to several articles containing a few general criticisms of the Vatican State's court system. (Pl.'s Mem. in Opp'n at 3–5; Fisher Decl. Exs. A–D.) Defendant's expert points out that, for the most part, these articles discuss the Vatican's ecclesiastical courts, which exclusively decide religious and spiritual matters. (First Cavana Decl. ¶ 62; Second Cavana Decl. ¶¶ 9–17, 38–44.) To whatever extent these articles are relevant, they fall far from demonstrating that this is "a case where the alternative forum is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *Monegasque*, 311 F.3d at 499 (finding that "bare denunciations and sweeping generalizations" of corruption was not sufficient to show foreign forum was inadequate); *see also Blanco*, 997 F.2d at 981 (rejecting argument that Venezuela was inadequate forum where non-movant relied on "a series of newspaper articles . . . that depict the political unrest in Venezuela"); *Zeevi Holdings LTD.*, 2011 U.S. Dist. LEXIS 38565, at *22–24 (finding Bulgaria to be an adequate forum despite evidence of pervasive corruption in Bulgarian judiciary based on reports from the European Union and various other organizations); *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 360 (S.D.N.Y. 2010) (declining to find Guatemala judicial system politically corrupt where plaintiffs submitted "various news articles on corruption and violent crime," and finding that "the incidents differ in kind from the systemic judicial breakdowns that have prompted other courts to question forum adequacy" (citing *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 138 (2d Cir. 2000) (the Liberian "judicial system, already hampered by inefficiency and corruption, collapsed for six months following the outbreak of fighting" (internal quotation marks omitted))); *Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen Ag*, 535 F. Supp. 2d 403, 411 (S.D.N.Y. 2008) (finding Croatia to be an adequate alternative forum despite news reports and government statements suggesting political corruption in the Croatian judiciary).

(S.D.N.Y. 2003) (finding that Russia was adequate forum despite specific allegations of corruption).

As discussed above, the "'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record," even in circumstances significantly more questionable than those here. *Id.* (quoting *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) (collecting cases)); *see also BFI Grp. Divino Corp.*, 298 F. App'x at 91. Indeed, the Second Circuit has "repeatedly emphasized [that] . . . it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco*, 997 F.2d at 982 (citation and internal quotation marks omitted). This is particularly true given the deference our courts provide to their foreign counterparts. *See Zeevi Holdings LTD*, 2011 U.S. Dist. LEXIS 38565, at *24 (citation omitted); *see also Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510, 539 (S.D.N.Y. 2002) ("[I]t will be a black day for comity among sovereign nations when a court of one country, because of a perceived 'negative predisposition,' declares the incompetence or worse of another nation's judicial system." (citation and internal quotation marks omitted)).

d. *Judicial Expertise and Publication of Case Law*

Plaintiff also argues that it would be unreasonable to enforce the forum selection clauses because the Vatican courts have limited experience with cases involving licenses and sublicenses. (Pl.'s Mem. in Opp'n at 6–7.) This allegation is based on the fact that plaintiff's research, such that it is, revealed only two cases decided by Vatican courts involving the rights of

licensees.[19]  (*Id.*)  Plaintiff's research notwithstanding, it is difficult to fathom that a commercial

court such as the Vatican Tribunal would be wholly unfamiliar with the relatively

straightforward questions of contract law and fraud at issue here.  Moreover, there is nothing in

the amended complaint or plaintiff's submissions to suggest that judges of the Vatican Tribunal,

each of whom is also an Italian law professor at an Italian university, are unqualified to decide

the legal issues in this case.  (*See* Second Cavana Decl. ¶¶ 22–26.)

In a related argument, plaintiff claims that it will be prejudiced by the fact that the

Vatican courts do not publish their decisions.  (Pl.'s Mem. in Opp'n at 7.)  The Vatican State

concedes that Vatican court decisions are not published.  It notes, however, that the Vatican

employs a civil law system in which legal precedents play a less important role than in common

law systems.  (*See* Second Cavana Decl. ¶¶ 34–37 ("Prior judicial precedents are not binding on

the Vatican Courts and are not considered a mandatory or binding source of law.")  *See, e.g.*,

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 343 (2d Cir. 2005) (noting

that in a civil law jurisdiction such as Thailand, "judicial decisions in general are of only

persuasive and not binding authority").

The fact that the Vatican courts do not publish their decisions does not render the Vatican

forum inadequate.  Although parties normally have access to prior court decisions in civil law

countries, the Vatican courts would apply Italian law to this case, and plaintiff would have full

---

[19] One of these cases involved a party who claims she was unable to retain counsel for a Vatican court case involving the Vatican Library.  (Pl.'s Mem. in Opp'n at 6.)  The party claims that several lawyers admitted to practice in the Vatican courts told her they would not be permitted to continue practicing law in the Vatican courts if they represented her in a case against the Vatican Library.  (Fisher Decl. Ex. E (Decl. of Elaine Peconi in Supp. of Opp'n to Mot. to Dismiss, executed Feb. 26, 1998, in *Cortile Del Belvedere, Inc. v. Biblioteca Apostolica Vaticana*, Case No. EDCV-98-30 (C.D. Ca.)) ¶ 6.)  Plaintiff asserts that this fact demonstrates that "counsel for the Vatican Tribunals is virtually unobtainable."  (Pl.'s Mem. in Opp'n at 14.)  The Court disagrees.  Setting aside the obvious hearsay and staleness issues with this thirteen-year-old declaration, and accepting it as true, it would be anomalous to conclude on the basis of this single incident that "counsel for the Vatican Tribunal is virtually unobtainable."  Moreover, the Vatican State's expert notes that attorneys are generally permitted to appear in civil and commercial matters before the Vatican Tribunal on a *pro hac vice* basis.  (Second Cavana Decl. ¶¶ 29–33.)  Plaintiff does not dispute this fact.

access to consult Italian codes of law, legal commentary, and published Italian cases. (Second

Cavana Decl. ¶¶ 34–37.)[20] Courts in this Circuit have found that civil law countries, including

Italy, provide an adequate forum. *Trabucco v. Intesa Sanpaolo, S.P.A.*, 695 F. Supp. 2d 98, 106

(S.D.N.Y. 2010) (noting that "Italy would be a perfectly acceptable alternative forum"); *Taub v.

Marchesi Di Barolo S.P.A.*, No. 09-CV-599 (ADS), 2009 U.S. Dist. LEXIS 115565, at *6

(E.D.N.Y. Dec. 10, 2009) (finding that "the Italian court is an adequate alternative forum").

Thus, plaintiff would not be forced to litigate in the dark because Italian law would guide the

decision of the Vatican judges.[21] (Second Cavana Decl. ¶¶ 24–25, 37.) Moreover, "some

inconvenience or the unavailability of beneficial litigation procedures similar to those available

in the federal district courts does not render an alternative forum inadequate." *Borden Inc. v.

Meiji Milk Prods. Co.*, 919 F.2d 822, 829 (2d Cir. 1990) (citation omitted); *see also Flex-N-Gate

Corp. v. Wegen*, No. 08-CV-2502 (LLS), 2008 U.S. Dist. LEXIS 105781, at *12 (S.D.N.Y. Dec.

29, 2008) ("Nor do procedural differences, including less liberal pretrial discovery rules, render

Germany an inadequate forum.").

> e. *Vatican Law*

Plaintiff also contends that the Court should not enforce the forum selection clauses

because Vatican law "would not permit litigation of all of [its] claims against the [Vatican

State]." (Pl.'s Mem. in Opp'n at 15.)

---

[20] Plaintiff does not dispute that the Vatican courts would apply substantive Italian law and procedural rules closely modeled on Italian civil procedure in deciding this case. As noted above, plaintiff did not submit its own expert report on Vatican law, choosing to base its arguments almost entirely on the Vatican State's expert report. The Court notes that plaintiff has the heavy burden to show that enforcement of the forum selection clauses would be unreasonable.

[21] Plaintiff does not argue that there is a dearth of Italian case law and commentary regarding the rights of licensees and sublicensees.

In deciding whether it would be unreasonable to enforce a presumptively enforceable forum selection clause because the plaintiff would be deprived of a remedy under the law of the selected forum,

> it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States . . . . Instead, the question is whether the application of the foreign law presents a danger that [plaintiff] 'will be deprived of *any remedy* or treated unfairly.'

*Roby*, 996 F.2d at 1363 (emphasis added) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–55 (1981)); *see also Base Metal Trading Ltd. v. Russian Aluminum*, 98 F. App'x 47, 50 (2d Cir. 2004) ("Only where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all should a district court . . . [find] that the alternative forum is inadequate." (citation and internal quotation marks omitted)); *Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 158 (2d Cir. 2005) (same).

Here, the Vatican State's expert explains that plaintiff could bring claims in the Vatican courts for pre-contractual liability and violations of morality. (First Cavana Decl. ¶¶ 84–85.) Plaintiff's expert explains that "pre-contractual liability under Vatican Law covers any conducts [sic] contrary to the parties' reciprocal duty of *buona fede* (good faith), taking place before and in connection with the execution of a contract." (*Id.* ¶ 84.) Many of the allegations in plaintiff's amended complaint concern fraudulent acts and misrepresentations that purportedly occurred before plaintiff executed the sublicense agreements. (*See, e.g.*, Am. Compl. ¶¶ 35–44.) Claims for pre-contractual liability would cover these alleged acts and misrepresentations.

Plaintiff nevertheless argues that claims for pre-contractual liability would not cover fraudulent acts taken after the execution of the sublicenses, and that, even if the morality claims would cover such actions, the 3,000 Euro damages cap on morality claims is inadequate. (Pl.'s Mem. in Opp'n at 15–16.) Although plaintiff could possibly recover less for some of its claims

in a Vatican court than it could potentially recover in a United States court, the fact that "the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum . . . should ordinarily not be given conclusive or even substantial weight." *Piper Aircraft Co.*, 454 U.S. at 247, 255 ("although [plaintiffs'] potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly"); *see also Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1980) (en banc) (maximum recovery of $570,000 in foreign forum as opposed to $8 million in U.S. forum did not render foreign forum inadequate: "It is abundantly clear . . . that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens."); *Vigilant Ins. Co. v. Nippon Yusen Kaisha (NYK Line)*, No. 97-CV-7517 (DLC), 1998 U.S. Dist. LEXIS 10491, at *7 (S.D.N.Y. July 13, 1998) (holding that party opposing enforcement of forum selection clause "failed to establish that enforcement of the Clause will deprive it 'of any remedy,' . . . [rather,] at most it has shown that it might not obtain its preferred remedy" (quoting *Roby*, 996 F.2d at 1363)).

In short, this is not one of the "rare circumstances" where the remedy available through litigation abroad is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co.*, 454 U.S. at 254–55 & n.22; *see also Roby*, 996 F.2d at 1363; *Younis v. Am. Uni. in Cairo*, 30 F. Supp. 2d 390, 392–95 (S.D.N.Y. 1998) (finding Egypt to be adequate forum despite evidence that plaintiff would have more difficulty succeeding and recover a smaller award because an adequate forum "does not require a remedy equivalent to that in the original forum, or even a favorable one; it requires only that some remedy exists, and that the parties will be treated fairly" (citation omitted)).

*f.   Expense of Litigation Abroad and Location of Witnesses*

Finally, plaintiff argues that it would be more expensive to litigate in a Vatican court and that "most of the witnesses and other evidence in this case are located in the United States." (Pl.'s Mem. in Opp'n at 18–20.)

The Second Circuit rejected these arguments in *Phillips*, finding that the hardships of litigating in England, despite making litigation there potentially "more costly or difficult," were nothing more than the "obvious concomitants of litigation abroad . . ., [which] were . . . foreseeable [to the plaintiff] when he agreed to litigate in England."  494 F.3d at 393 (citations omitted); *see also Effron v. Sun Line Cruises*, 67 F.3d 7, 10–11 (2d Cir. 1995) (enforcing forum selection clause against U.S. citizen requiring litigation in Greece and noting "we are concerned here with a forum of contract, not of convenience"); *Export-Import Bank of the U.S. v. Hi-Films S.A. de C.V.*, No. 09-CV-3573 (PGG), 2010 U.S. Dist. LEXIS 100927, at *27 (S.D.N.Y. Sept. 24, 2010) (finding that arguments relating to cost or location of witnesses "do not constitute the 'sufficiently strong showing' necessary to rebut the presumption of enforceability" of a forum selection clause (quoting *Martin v. Creative Mgmt. Grp., Inc.*, No. 10-CV-2214 (DLC), 2010 U.S. Dist. LEXIS 66092, at *6 (S.D.N.Y. June 29, 2010) (argument that "few, if any, of [plaintiff's] witnesses or documents are located in Florida, rendering litigation in that state impossible" did not rebut presumption of enforceability because court found that "litigation in Florida 'may be more costly or difficult, but not that it is impossible'" (quoting *Phillips*, 494 F.3d at 393))); *Universal Grading Serv.*, 2009 U.S. Dist. LEXIS 49841, at *75 ("monetary hardship alone does not defeat the operation of a forum selection clause with regard to those plaintiffs who are bound by it" (citations omitted)); *Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1272 (S.D.N.Y. 1995) (internal quotation marks omitted) ("mere inconvenience and

expense of travelling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum" because "even if the traveling were a serious inconvenience, it was contemplated by the parties when entering into the contract" (citation and internal quotation marks omitted)); *Alpa S.A. Agroindustrial Alemano v. ACLI International, Inc.*, 573 F. Supp. 1070, 1078 (S.D.N.Y. 1983) (fact that party agreed to forum selection clause undercut any argument of inconvenience).

Accordingly, even assuming that there are more potential witnesses and evidence in the United States than there is in the Vatican State, this fact does little to carry plaintiff's heavy burden of rebutting the presumption that the forum selection clauses should be enforced.

> g. *Vacatur of Order Compelling Arbitration and the Possibility of Parallel Proceedings*

As noted above, this Court granted the motion brought by SRLLC and Colapinto to compel arbitration in the Vatican State pursuant to an arbitration clause in the sublicense agreements. However, when faced with the costs of arbitrating abroad, both defendants, together with plaintiff, have abandoned their right to arbitration. Accordingly, plaintiff, SRLLC, and Colapinto have jointly moved to vacate this Court's August 21, 2008 Order compelling arbitration so that the parties may continue the litigation of those claims in this Court. (Doc. Nos. 82, 100.) No party opposes the motion.

Given that "'[t]he right to arbitration, like any other contract right, can be waived,'" the Court GRANTS the joint motion to vacate the August 21, 2008 Order compelling arbitration in the Vatican State. *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 229 (E.D.N.Y. 2009) (granting plaintiff's motion to vacate order compelling arbitration and staying the action because defendant's actions indicated it had no intent to actually arbitrate the claims in China) (quoting *Cornell & Co., Inc. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966));

*see also Demsey & Assoc., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972) ("Whereas there is a strong federal policy favoring arbitration, the right to arbitrate may be waived." (citing *Cornell & Co., Inc.*, 360 F.2d at 513) (other internal citation omitted)); *Matter of Campbell (State of New York)*, 830 N.Y.S.2d 806, 807 (App. Div. 2007) ("It is well settled that a right to arbitration, like contract rights generally, may be waived or abandoned." (citations omitted)). Therefore, plaintiff's claims against defendants SRLLC and Colapinto shall proceed in this Court.

Anticipating that the Court would vacate the Order compelling arbitration, plaintiff argues that enforcing the forum selection clauses and dismissing its claims against the Vatican State "is not appropriate when issues common both to that set of claims and to other claims in the case need to be resolved." (Pl.'s Mem. in Opp'n at 16.) In other words, plaintiff asserts that having to litigate its claims in two different courts would be unduly burdensome.

This argument has no merit. First, the Vatican State should not be denied its right to enforce the forum selection clauses merely because the others have reconsidered their position on arbitrating in the Vatican and now wish to litigate in a United States court. Second, as a matter of law, "the existence of parallel proceedings in foreign (or domestic) fora is not sufficient to overcome the presumption of enforceability." *Export-Import Bank of the United States*, 2010 U.S. Dist. LEXIS 100927, at *33–34 (citing *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06-CV-0615 (BSJ), 2008 U.S. Dist. LEXIS 71931, at *30–31 (S.D.N.Y. Feb. 27, 2008) (rejecting argument that "having to litigate claims from the same casualty in two different fora would be unduly burdensome [because] efficiency and fairness concerns, without more, cannot generally justify the nonenforcement of a mandatory forum selection clause"); *Street, Sound Around Elects., Inc. v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) ("The

possibility of multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause. Refusing to enforce a forum selection clause on this basis would undermine whatever measure of certainty such clauses bring to the international shipping transactions in which they are commonly employed." (internal citation omitted));
*Glyphics Media, Inc.*, 2003 U.S. Dist. LEXIS 4387, at *17 (same)).

All parties in this case agreed to litigate in the Vatican, and it is clear that plaintiff must have expected it would be forced to litigate any claims against the defendants abroad. It would be both inequitable and incorrect as a matter of law to permit plaintiff to use the unlikely event that SRLLC and Colapinto would waive their right to litigate abroad as grounds for depriving the Vatican State of its right to enforce the forum selection clauses. Accordingly, the Court rejects plaintiff's judicial economy arguments.

In sum, plaintiff has failed to rebut the presumption of enforceability given to the mandatory forum selection clauses in this case, and the Vatican State's motion to dismiss is GRANTED.[22]

5.      <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

The Vatican State asked the Court to decide the motion to dismiss for improper venue based on the forum selection clauses or, alternatively, forum non conveniens before considering the subject matter jurisdiction motion, arguing that considerations of judicial economy, convenience, and fairness warranted adjudicating the venue motion first. (Doc. No. 108.) Plaintiff opposed this request. (Doc. No. 109.)

---

[22] Having decided that claims against the Vatican State must be dismissed pursuant to the mandatory forum selection clauses, this Court need not address the Vatican State's alternative arguments that plaintiff's claims should be dismissed on the basis of forum non conveniens. *Export-Import Bank of the U.S.*, 2010 U.S. Dist. LEXIS 100927, at *35 n.5 ("Where a foreign selection clause is found mandatory and otherwise enforceable, the Court 'need not proceed with a forum non-conveniens analysis . . . .'" (quoting *Langsam v. Gardens*, 08-CV-2222 (WCC), 2009 U.S. Dist. LEXIS 52597, at *15–16 (S.D.N.Y. June 15, 2009))); *see also Bluefire Wireless, Inc.*, 2009 U.S. Dist. LEXIS 119009, at *15–16 n.6.

"Because of the primacy of jurisdiction, 'jurisdictional questions ordinarily must precede merits determinations in dispositional order.'" *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 397 (2d Cir. 2009) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)). However, "[i]mproper venue is not the type of merits-based dismissal which the Supreme Court has cautioned cannot take place before a court has assured itself of subject matter jurisdiction." *Crotona 1967 Corp. v. Vidu Brother Corp.*, No. 09-CV-10627 (NRB), 2010 U.S. Dist. LEXIS 137149, at *2 n.1 (S.D.N.Y. Dec. 20, 2010) (citing *Sinochem*, 549 U.S. at 431–32 (holding that because forum non conveniens is "a non-merits ground for dismissal," a district court "may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant"); Fed. R. Civ. P. 41(b) (listing improper venue among non-merits-based dismissals)); *accord Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 n.3 (4th Cir. 2006) (holding that district court had discretion to decide motion to dismiss based on forum selection clause before considering personal jurisdiction objections); *Fixture Specialists, Inc. v. Global Constr. Co.*, No. 07-CV-570 (JRS), 2007 U.S. Dist. LEXIS 84260, at *3 (E.D. Va. Nov. 14, 2007) ("[A] district court may dismiss a suit on the basis of a forum-selection clause without addressing whether it has jurisdiction over the parties." (citing *Sinochem*, 549 U.S. at 431–32)).

Here, considerations of convenience, fairness, and judicial economy warrant bypassing the question of subject matter jurisdiction in favor of deciding the motion to dismiss for improper venue on the basis of the forum selection clauses. *See Sinochem*, 549 U.S. at 432. First, plaintiff requests that "it be permitted to take discovery from the [Vatican State] and third parties to complete the record on the motion" if the Court "has concerns about the sufficiency of the facts"

in the record with respect to the subject matter jurisdiction motion. (Pl.'s Mem. in Opp'n to Mot. to Dismiss for Subject Matter Jurisdiction at 2 n.1.) In contrast, plaintiff requests neither discovery nor a hearing in connection with the motion to dismiss for improper venue based on the forum selection clauses. Principles of judicial economy dictate that the Court should avoid, if possible, the delays associated with discovery. *See, e.g.*, *Amalgamated Bank of New York v. Ash*, 823 F. Supp. 209, 221 (S.D.N.Y. 1993) (principles of judicial economy warranted declining to exercise jurisdiction over state law claims requiring additional discovery). Second, it is only fair that the Vatican State should benefit from the forum selection clauses for which it bargained at the earliest possible time, and before incurring the additional litigation costs associated with discovery. *See Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, 03-CV-9892 (GBD), 2004 U.S. Dist. LEXIS 13132, at *12 (S.D.N.Y. July 13, 2004) (explaining that forum selection clauses should "dispel confusion as to where an action is to be commenced thereby sparing litigants the time and expense of pretrial motions to determine the proper forum while concomitantly conserving judicial resources" (citing *Carnival Cruise Lines*, 499 U.S. at 593–94). Finally, this course of action is more convenient because the Court is already familiar with the forum selection clauses, having previously construed the relevant provisions in compelling arbitration. (*See* Doc. No. 51.)

Accordingly, the Court bypasses the issue of subject matter jurisdiction in favor of deciding the motion to dismiss for improper venue based on the forum selection clauses.

## <u>CONCLUSION</u>

For the foregoing reasons, the Vatican State's motion to dismiss for improper venue based on the forum selection clauses (Doc. No. 92) is GRANTED. For the reasons stated above, the Court need not decide the Vatican State's motion to dismiss for lack of subject matter

jurisdiction (Doc. No. 104).  The joint motion submitted by plaintiff, defendant SRLLC, and defendant Colapinto to vacate this Court's August 21, 2008 Order compelling arbitration (Doc. Nos. 82, 100) is also GRANTED.  This case is recommitted to the assigned Magistrate Judge for all pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York
      August  24, 2011

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge